IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHARLES ROBISON RAKESTRAW                                              PLAINTIFF

v.                                        Civil Action No. _____1:22cv67-GHD-RP_____

CADENCE BANK; and
EQUIFAX INFORMATION SERVICES LLC                                      DEFENDANTS

## COMPLAINT AND DEMAND FOR JURY TRIAL

Charles Robison Rakestraw ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.* against Defendants Cadence Bank ("Cadence") and Equifax Information Services LLC ("Equifax"; Cadence and Equifax, collectively, the "Defendants").

## INTRODUCTION

1.     Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.* by the Defendants. Plaintiff contends Defendants published inaccurate information on his credit reports and failed to conduct a reasonable investigation *after* Plaintiff disputed the reporting with Equifax.

2.     Plaintiff further contends Equifax failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. §1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's

1

eligibility for credit.

## **JURISDICTION**

3.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. §1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

4.     Venue in the Northern District of Mississippi, Aberdeen Division is proper pursuant to 28 U.S.C. §1391 because Cadence is "at home" in this District and further because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## **PARTIES**

5.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

6.     Plaintiff is a natural person who resides in Tupelo, MS.

7.     Plaintiff is a "consumer" as defined in 15 U.S.C. §1681a(c).

8.     Cadence is a "furnisher" as defined in 15 U.S.C. §1681a(r)(5), with its principal place of business located at 201 S Spring St, Tupelo, MS 38804.

9.     Equifax is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. §1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309.

10.     During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Mississippi and conducted business in the State of Mississippi on a routine

and systematic basis.

11.     Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC §1681a(d), to third parties. Equifax regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. §1681a(f) of the FCRA.

12.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

13.     Any violations by Defendants were not in good faith, was knowing, negligent, willful, and intentional, and Equifax did not maintain procedures reasonably adapted to avoid any such violations.

## FACTUAL ALLEGATIONS

14.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

15.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

16.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

17.     The FCRA is intended to ensure consumer reporting agencies ("CRAs") exercise

their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

18.     Equifax, one of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA"), in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

19.     Equifax regularly purchases and obtains consumer bankruptcy information to include in consumer reports.

20.     Equifax's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

21.     Equifax obtains consumer information from various sources. Some consumer information is sent directly to Equifax by furnishers, and other information is independently gathered by Equifax from third party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

4

22.     Equifax regularly seeks out and procures consumer bankruptcy filing and discharge information, with the intention of including it in the consumer reports Equifax sells to third parties for a profit.

23.     The diligence Equifax exercises in uncovering and recording consumer bankruptcy filings is not replicated in Equifax's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

24.     Equifax's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by §1681e(b).

25.     Equifax knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its/their own files.

26.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Equifax) to make lending decisions.

27.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Equifax's reports.

28.     The information Equifax includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

29.     FICO Scores are calculated using information contained in Equifax's consumer reports.

30.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of their

creditworthiness.

31.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

     a.    "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

     b.    The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

32.     Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

33.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

34.     Equifax regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Equifax.

35.     A consumer's income, however, is not included in their consumer report; only their "amount of debt" is.

36.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest rates and lower credit limits).

37.     A consumer who has obtained a bankruptcy discharge and has an account that is

inaccurately reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

38.    Equifax is aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

39.    However, Equifax also knows that it is rare for a pre-petition debt to be reaffirmed or successfully challenged in an adversary proceeding.

40.    Further, Equifax knows that if reaffirmation agreements or adversary proceedings exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

41.    Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged), can be easily retrieved from the same sources from which Equifax independently obtains consumer bankruptcy case information.

42.    Equifax also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

43.    Despite the availability of accurate consumer information, Equifax regularly reports inaccurate information about accounts after consumers receive a Discharge Order.

44.    Equifax's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

45.    Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Equifax frequently reports information regarding pre-bankruptcy debts based on information they know is incomplete or inaccurate.

46.     After a bankruptcy is discharged, Equifax also routinely relies on furnisher data, even though the furnisher has ceased updating an account upon the filing of a bankruptcy and the account information is "stale".

47.     Consequently, Equifax regularly publishes consumer information that conflicts with information: provided by data furnishers to Equifax, already included in Equifax's credit files, contained in public records that Equifax regularly accesses, and/or sourced through Equifax's independent and voluntary efforts.

48.     Equifax routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by §1681e(b).

49.     Equifax knows the information it reports about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Equifax's own files.

50.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Equifax for its inaccurate credit reporting following a Chapter 7 discharge.

51.     Thus, Equifax is on continued notice of its inadequate post-bankruptcy reporting procedures. More specifically, Equifax is on continued notice that its/their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

## ALLEGATIONS SPECIFIC TO THE PLAINTIFF'S BANCORPSOUTH ACCOUNT

52.     In or around 1999, Plaintiff and his ex-wife financed the purchase of their home with a mortgage loan of $60,000.

53.     In or around 2003, Plaintiff divorced his wife. With their divorced, Plaintiff deeded

his interest in their home to his ex-wife.

54.     Plaintiff, jointly with his ex-wife, filed a Chapter 7 Bankruptcy petition on or about November 30, 2012, in the United States Bankruptcy Court for the Northern District of Mississippi. (Case No. 12-15146.)

55.     Cadence, formerly BancorpSouth Bank, received notice of Plaintiff's bankruptcy. (Doc. 7.)

56.     Plaintiff and his ex-wife were discharged in bankruptcy on or about March 26, 2013. (Doc. 30.)

57.     Thereafter, Plaintiff was not personally liable for the dischargeable debts. All dischargeable debts carried zero-dollar balances after the bankruptcy discharge.

58.     Cadence received notice of Plaintiff's discharge in bankruptcy. (Doc. 31.)

59.     For almost a decade after Plaintiff's bankruptcy, Plaintiff's mortgage loan was not reporting on his Equifax credit reports.

60.     However, in or around 2021, Defendants began reporting the mortgage loan on Plaintiff's Equifax credit report, as a BancorpSouth account ending with xxxxx31 and opened on September 2, 1999, with a balance of $31,166, and several late payments (the "Account").

61.     Defendants have been inaccurately reporting the Account.

62.     The Account was listed in Plaintiff's bankruptcy petition and was actually discharged on or about March 26, 2013, with Cadence receiving notice of the petition and the discharge.

63.     Therefore, the Account should have been reported as "included in bankruptcy", and/or with a zero-dollar balance.

64.     However, Defendants inaccurately reported the Account as "pays as agreed",

instead of as "included in bankruptcy", and having an outstanding balance of $31,166, instead of a zero-dollar balance.

65.     Defendants further reported several late payments on the Account, within the last three years.

66.     Defendants did not indicate that the Account was discharged in bankruptcy or report the Account with a zero-dollar balance, despite reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report.

## ALLEGATIONS SPECIFIC TO DEFENDANTS' INVESTIGATION

67.     In or around August 2021, Plaintiff was interested in and began looking into buying a new truck.

68.     Plaintiff's truck dealership explained to Plaintiff that potential lenders that rely on Equifax's credit reports were offering much worse financing terms than those potential lenders that rely on the other two national CRAs, Experian and Trans Union.

69.     At that time, Plaintiff discovered that the Account was reporting on his Equifax credit report, but not on his Experian or Trans Union reports.

70.     Because he needed to secure financing to buy his truck, Plaintiff was forced to accept financing from a lender who offered more onerous terms than if Equifax was reporting the Account accurately.

71.     On or about February 8, 2022, Plaintiff called Equifax and disputed the reporting of the Account (the "First Dispute").

72.     Upon information and belief, Equifax forwarded the First Dispute to Cadence, pursuant to 15 U.S.C. §1681i(a)(2)(A).

73.     On or about February 15, 2022, Plaintiff sent a letter to Equifax (the "Second

Dispute"). Therein, Plaintiff explained that the mortgage loan underlying the Account had been discharged in bankruptcy.

74.     Upon information and belief, Equifax forwarded the Second Dispute to Cadence, pursuant to 15 U.S.C. §1681i(a)(2)(A).

75.     Upon information and belief, Defendants did not conduct a reasonable investigation.

76.     Upon information and belief, Cadence only reviewed the information on its computer systems to confirm that the information furnished to Equifax matched the information on its systems.

77.     In turn, upon information and belief, Equifax simply disregarded the First and Second Disputes and instead relied blindly on Cadence's response, without conducting *any* independent investigation.

78.     Fundamentally, Equifax did not even review its own records containing Plaintiff's bankruptcy information, and the fact that the Account preceded the filing of the petition by more than 10 years, and that the Account had not reported on Plaintiff's reports from 2013 to 2021.

79.     On or about February 24, 2022, Equifax responded to the First Dispute. On its response, Equifax considered its investigation complete and verified its reporting as accurate, with the exception of updating the date of last activity and historical account information.

80.     Instead, Defendants should have deleted the Account altogether, or reported it as "included in bankruptcy" and/or with a zero balance.

81.     On or about March 4, 2022, Equifax responded to the Second Dispute. Again, Equifax considered its investigation complete and verified its reporting as accurate, with the exception of updating the balance, the past due amount, the actual payment amount, the date of

last activity, the terms of duration, historical account information, and the account history.

82.     Instead, Defendants should have deleted the Account altogether, or reported it as "included in bankruptcy" and/or with a zero balance.

### ALLEGATIONS SPECIFIC TO EQUIFAX'S PROCEDURES

83.     Upon information and belief, Equifax prepared one or more consumer reports concerning Plaintiff that included the inaccurate reporting of the Account.

84.     Equifax obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Equifax in Plaintiff's consumer reports.

85.     In the Public Records section of Plaintiff's consumer report, Equifax included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged under Chapter 7.

86.     Equifax also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual, or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

87.     Equifax is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, <u>unless a furnisher provides information showing that a specific debt was excluded from the discharge</u>.

88.     Equifax should have reported **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy and/or with a zero-dollar balance.

89.     Equifax failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy and/or with a zero-dollar balance.

90.     Equifax does not have reasonable procedures in place to detect and correct pre-Chapter 7 debts which continue to report balances after Equifax report a discharge.

91.     Equifax does not have reasonable procedures in place to detect and correct or suppress pre-Chapter 7 debts reporting balances, where Equifax is aware that the furnisher has ceased all account updates after the bankruptcy was filed.

92.     Notably, the other national consumer reporting agency/agencies Experian Information Solutions, Inc., and Trans Union LLC, did not inaccurately report the Account such as Equifax did.

93.     Cadence furnished information to Equifax that indicated Plaintiff's debt was included or discharged in bankruptcy, and/or had a zero-dollar balance after the bankruptcy discharge, but Equifax rejected or otherwise overrode the data Equifax received.

94.     Alternatively, Equifax knew from past experiences that Cadence furnished inaccurate information regarding discharged debts or, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

95.     Nevertheless, Equifax blindly relied on the information provided by Cadence even though this information conflicted with or was contradicted by information contained in Equifax's records, as well as Equifax's knowledge regarding Plaintiff's bankruptcy and discharge.

96.     If Cadence did not furnish data to Equifax that the Account was discharged, Equifax's blind reliance on Cadence was unreasonable.

97.     Equifax inaccurately reported that Plaintiff owed a balance that Plaintiff did not

actually owe, and also reported inaccurate account statuses and/or payment histories.

98.     Equifax inaccurately reported the Account with a balance owed after the Account was discharged in Chapter 7 Bankruptcy and therefore had a zero-dollar balance.

99.     Equifax failed to indicate that the Account had a zero-dollar balance and/or was discharged in Chapter 7 Bankruptcy.

100.    Equifax's reporting of the Account is patently false and therefore inaccurate.

101.    If not patently false, Equifax's reporting of the Account is materially misleading and therefore inaccurate.

## PLAINTIFF'S DAMAGES

102.    Upon information and belief, had Defendants accurately reported the Account with a zero balance, Plaintiff's credit scores and/or DTI would have been better.

103.    In or around August 2021, Plaintiff's dealership applied, on behalf of Plaintiff, for credit with JPMorgan Chase Bank, BB&T Bank, and Barnes Crossing Auto, LLC —who rely on Equifax's reports— and was approved at less than favorable rates and/or lower credit limit due to the inaccurate reporting of the Account by Defendants.

104.    Defendants' inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to JPMorgan Chase Bank, BB&T Bank, and Barnes Crossing Auto, LLC, by Equifax during the process of Plaintiff's credit applications.

105.    Further, Defendants' inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to Capital One Bank, and Discover Bank, by Equifax for purposes of account review inquiries or promotional inquiries.

106.    As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

107.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational damage, humiliation, stress, anger, frustration, shock, embarrassment, violation of Plaintiff's right to privacy, and anxiety.

<u>**COUNT I**</u>
**Violation of the Fair Credit Reporting Act, 15 U.S.C. §§1681i, 1681s-2(b)**

108.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

109.    The FCRA requires a credit reporting agency, either after receiving notice that a consumer disputes information that is being reported by a furnisher, to conduct an investigation with respect to the disputed information.

110.    Equifax failed to conduct a reasonable investigation under 15 U.S.C. §1681i.

111.    Equifax violated sections 1681n and 1681o of the FCRA by engaging in the following conduct that violates 15 U.S.C. §1681s-2(a):

a.    Willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

b.    Willfully and negligently failing to review all relevant information concerning Plaintiff's file;

c.    Willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

d.    Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff; and

e.    Willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Plaintiff to the other credit reporting agencies.

112.    The FCRA requires a furnisher such as Cadence —either after receiving notice

directly from the consumer or from a credit reporting agency that a consumer disputes information that is being reported by that furnisher— to conduct an investigation with respect to the disputed information. The investigation involves (a) reviewing all relevant information, (b) reporting the results of the investigation to the credit reporting agency, and (c) if the investigation reveals that the information is incomplete or inaccurate, reporting those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

113.     Cadence failed to conduct a reasonable investigation following receipt of no less than **two** indirect disputes under 15 U.S.C. §1681s-2(b)(1)(B).

114.     Cadence has willfully provided inaccurate information to Equifax despite having clear notice that Plaintiff's debt had been discharged in bankruptcy back in March, 2013.

115.     Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff that are outlined more fully above, and as a result, Defendants are liable to compensate Plaintiff for the full amount of statutory, actual, and punitive damages, along with attorneys' fees and costs, as well as other such relief, permitted by 15 U.S.C. §1681n.

116.     Defendants' violation of the FCRA was willful and therefore Plaintiff is entitled to seek statutory and punitive damages.

## COUNT II
### Violation of the Fair Credit Reporting Act, 15 U.S.C. §1681e(b)

117.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

118.     The FCRA requires CRAs, like Equifax, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. §1681e(b).

119.     Equifax negligently and/or willfully violated 15 U.S.C. §1681e(b) by failing to use

16

reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information pertaining to pre-bankruptcy debts after a consumer received a Discharge Order.

120.   Equifax independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported the same in Plaintiff's consumer reports.

121.   When Equifax voluntarily procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

122.   Equifax received notice of Plaintiff's bankruptcy discharge through public records, its own files, and information provided by data furnishers.

123.   Individual furnishers of account information also notified Equifax of Plaintiff's bankruptcy, as evidenced by other tradelines in Plaintiff's consumer report that are labeled included and discharged in bankruptcy.

124.   Equifax had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including Plaintiff's bankruptcy case number, court, date of filing, and date of discharge.

125.   But despite knowledge of Plaintiff's bankruptcy, Equifax inaccurately reported the Account, which predated Plaintiff's Chapter 7 Bankruptcy, with a status other than "discharged in bankruptcy", a balance greater than zero, and no post-bankruptcy late payments.

126.   Equifax knew or should have known of its obligations under the FCRA, especially those pertaining to reporting discharged debt with a zero-dollar balance.

127.   These obligations are well established by the plain language of the FCRA, in promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Equifax from which Equifax is on notice of its unreasonable procedures concerning the

reporting of discharged debts.

128. Additionally, Equifax possesses or could easily obtain substantial written materials that detail CRA's duties and obligations under the FCRA, including those arising after a consumer files for Chapter 7 Bankruptcy.

129. Despite knowledge of these legal obligations, Equifax willfully and knowingly breached its known duties in violation of 15 U.S.C. §1681e(b). Accordingly, Equifax deprived Plaintiff of Plaintiff's rights as a consumer under the FCRA.

130. Not only did Equifax have prior notice of its unreasonable procedures for reporting discharged debts, but it also possessed information from which it should have known the information reported about Plaintiff was inaccurate.

131. Equifax knew or should have known that the effect of a Discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

132. Equifax knows that discharged pre-petition debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

133. Yet in this case, Equifax reported the Account, which predated Plaintiff's bankruptcy, with a balance owed (instead of a zero-dollar balance), and late payments, after it was discharged.

134. Equifax violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/consumer report.

135.     Equifax also violated 15 U.S.C. §1681e(b) by failing to report accurate information when Equifax knew or should have known the information it was reporting is inaccurate, and/or otherwise contradicted by information known by Equifax, reported to Equifax, and reasonably available to Equifax.

136.     Equifax has intentionally chosen to disregard knowingly inaccurate open balances and payment obligations in its reporting for pre-bankruptcy accounts in Equifax's automated "bankruptcy scrubs" it has been employing for over a decade.

137.     Equifax's violations of 15 U.S.C. §1681e(b) were willful.

138.     Alternatively, Equifax's violations of 15 U.S.C. §1681e(b) were negligent.

139.     Equifax's inaccurate reporting damaged Plaintiff's creditworthiness.

140.     Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Equifax inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the Account was discharged in bankruptcy.

141.     Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

142.     Equifax is a direct and proximate cause of Plaintiff's damages.

143.     Equifax is a substantial factor in Plaintiff's damages.

144.     Therefore, Equifax is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. §1681 *et seq*.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of

all issues triable by jury.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff Charles Robison Rakestraw respectfully requests that this Honorable Court enter judgment against Defendants Cadence Bank and Equifax Information Services LLC for the following:

A.  Declaratory judgment that Cadence violated the FCRA, 15 U.S.C. §1681s-2(b);

B.  Declaratory judgment that Equifax violated the FCRA, 15 U.S.C. §§1681e(b), 1681i;

C.  An award of actual damages pursuant to 15 U.S.C. §§1681n(a)(1) or 1681o(a)(1);

D.  An award of statutory damages pursuant to 15 U.S.C. §§1681n(a)(1) and 1681o(a)(1);

E.  An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. §1681n(a)(2),

F.  Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and §1681o(a)(2); and

G.  Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

Dated this the 27th day of April 2022.

PLAINTIFF CHARLES ROBISON RAKESTRAW,

By: *Brian K. Herrington*
Brian K. Herrington, MB# 10204
CHHABRA GIBBS & HERRINGTON PLLC
120 N. Congress Street, Suite 200
Jackson, MS 39201
T: 601-326-0820
F: 601-948-8010
E: bherrington@nationalclasslawyers.com

Counsel for Plaintiff